The FIRST NATIONAL BANK OF ANCHORAGE, Trustee, Appellant,

v.

STATE of Alaska, OFFICE OF PUBLIC ADVOCACY, Guardian, and Ernest M. Schlereth, Guardian ad Litem, Appellees.

No. S–6599.

Supreme Court of Alaska.

Sept. 8, 1995.

John R. Beard, Anchorage, for appellant.

Ernest M. Schlereth, Law Office of Ernest M. Schlereth, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, COMPTON and EASTAUGH, JJ.

*OPINION*

MOORE, Chief Justice.

## I. *INTRODUCTION*

This case arises out of an inter vivos revocable trust established by F.H. The Office of Public Advocacy (OPA), acting as F.H.'s guardian, obtained a court order removing First National Bank of Anchorage (First National) as trustee. First National then moved for relief from judgment under Alaska

---

Civil Rule 60(b), arguing, *inter alia,* that the superior court's order was void for want of jurisdiction. First National appeals the superior court's denial of its Civil Rule 60(b) motion. We affirm.

## II. *FACTS AND PROCEEDINGS*

In 1980 F.H. established a revocable inter vivos trust, naming herself as lifetime beneficiary and First National as trustee. The trust included the following provision: "Any Trustee at any time acting hereunder may at any time be removed by the Trustor from its office as Trustee hereunder by delivery to it of a written instrument, signed and acknowledged by the Trustor."

After F.H. was diagnosed with senile dementia in 1985, a Pioneer Home social worker filed a Petition for Appointment of Guardian and Conservator.[1] The superior court then appointed OPA as F.H.'s guardian. However, the court declined to appoint OPA as conservator at that time, commenting that "[t]he issue of conservator should be held in abeyance until hearing on the matter based on the probable impact of the conservator's appointment upon the Trustee's obligations." The court subsequently granted First National's unopposed motion to dismiss the petition for conservatorship.

In October 1992 OPA moved for clarification of the court's 1985 order appointing OPA guardian. Specifically, OPA wished to clarify whether the court's order authorized OPA to exercise the powers vested in F.H. under the trust document. Although attorney Dan Coffey entered an appearance on behalf of First National, First National did not file an opposition.

The court's November 1992 clarification order provided:

IT IS HEREBY ORDERED that the previous Order Appointing Guardian is hereby clarified to reflect the original intent thereof in the following respects:

1. The Office of Public Advocacy is appointed as full guardian with all the powers

---

1. The guardianship statute authorizes a guardian to make medical, placement and other related decisions. AS 13.26.150. This includes financial decisions in cases where no conservator has been appointed. AS 13.26.150(c)(6). The conservatorship statute authorizes a conservator to handle a ward's financial affairs. AS 13.26.280.

and duties set out in AS 13.26.090 through 13.26.150, including AS 13.26.150(c)(6).[2]

2. The Office of Public Advocacy has the power to deal with the [F.H.] Trust, including the trustee, First National Bank of Anchorage, as the ward (trustor) would have if she were not incapacitated. (This power does not include the right to change the testamentary beneficiary designation under the trust, whereby The Alaska Society for the Prevention of Cruelty to Animals, Inc. would receive the corpus of the trust in the event of the ward's demise).

3. In the event that the Office of Public Advocacy or any substituted guardian wishes to terminate the [F.H.] trust or the current trustee's duties, the court appointed guardian will obtain court approval therefor beforehand.

In August 1993 the court visitor appointed to review F.H.'s case[3] recommended that Community Advocacy Project of Alaska (CAPA), a private non-profit guardianship organization, take over guardianship duties from OPA. The superior court scheduled a hearing on this proposed transfer and appointed Dan Coffey to appear as F.H.'s attorney and an OPA social worker to appear as court visitor. Coffey moved to withdraw as F.H.'s court-appointed attorney and Ernest Schlereth was appointed in his place. Because of F.H.'s severe dementia, the court subsequently appointed Schlereth to serve as F.H.'s guardian ad litem at the hearing.

At the January 1994 hearing, the court visitor recommended transferring guardianship to CAPA. Schlereth expressed his concern that the proposed transfer might unnecessarily deplete the trust funds because both CAPA and First National charged fees for their services. The court stated that it was unwilling to proceed without more information concerning F.H.'s assets. It directed Schlereth to prepare an order requesting First National to provide the necessary information.[4] The court then continued the hearing.

On June 15, 1994, OPA moved the court for an order terminating First National as trustee and appointing OPA as successor trustee. This motion was served by mail on First National trust officer Jill Reitz and attorney Dan Coffey. On June 30 the superior court entered the following order:

> Community Advocacy Project of Alaska, Inc., the current guardian/conservator has requested that before the Office of Public Guardian consent to such transfer, more information would be required from the trust department of First National Bank of Anchorage, acting as trustee of the [F.H.] Revocable Trust, so that the public guardian may have adequate and complete information concerning the respondent's assets and handling of her financial affairs.
>
> Once the Office of Public Advocacy has obtained the information it requests from the First National Bank of Anchorage trust department, a hearing may be scheduled where a determination may be made as to the possible transfer of the guardianship/conservatorship roles to Community Advocacy Project of Alaska, Inc., and also considering the possible transfer of the trusteeship's role to Community Advocacy Project of Alaska, Inc., as is in the best interests of the respondent.
>
> The First National Bank of Anchorage shall cooperate with the public guardian as the duly authorized representative of the respondent in supplying in a timely fashion the information requested concerning the records and accounting of the trust as it is also required to do pursuant to paragraph 7 of the trust instrument.

2. As noted in footnote 1, AS 13.26.150(c)(6) authorizes a guardian to make certain financial decisions for a ward:

> [I]f a conservator for the estate of the ward has not been appointed, the guardian may receive money and property deliverable to the ward and apply the money and property for support, care, and education of the ward; however, the guardian may not apply the ward's money or property for the services as guardian or for room and board which the guardian, or the guardian's spouse, parent, or child has furnished the ward unless, before payment, the court finds that the ward is financially able to pay and that the charge is reasonable; notice of a request for payment approval shall be provided to at least one relative of the ward if possible; the guardian shall exercise care to conserve any excess money or property for the ward's needs.

3. See AS 13.26.118(a) (providing that a guardian or court-appointed visitor must evaluate the ward's situation and make recommendations on an annual basis).

4. The court's order provided, in part:

> Upon a review hearing to determine whether guardianship/conservatorship can be transferred from the Office of Public Advocacy to

IT IS HEREBY ORDERED that the Motion for Order Terminating the First National Bank as Trustee of the [F.H.] Trust filed by the guardian ad litem is hereby GRANTED.

IT IS FURTHER ORDERED that the Public Guardian, through the assistant public guardian assigned to the respondent's case, Kelly Young, is hereby authorized to give notice to the First National Bank of Anchorage of its termination as trustee as provided under the trust instrument. The Office of Public Advocacy is hereby appointed as successor trustee under the trust. Any changes in the trust instrument effecting final disposition, or other changes in the terms of the trust instrument shall be made only upon prior written court approval. The Office of Public Advocacy may utilize the services of Kemper Securities in order to invest the trust funds which charges no annual fee for its investment services.

In a July 5th letter, OPA sent First National a copy of the June 30th order and informed First National that its duties as trustee would terminate in twenty days. OPA also requested an accounting.

On July 26 First National moved for relief from judgment under Civil Rule 60(b). It argued (1) that the June 30th order was void for want of jurisdiction; (2) that OPA did not have the statutory authority to serve as trustee; (3) that OPA's duties as F.H.'s guardian would conflict with its duties as trustee; and (4) that there was no "cause" to remove First National as trustee.

On July 27 OPA moved, ex parte, for an order to show cause why First National should not be held in contempt for failing to comply with the court's June 30th order.[5] The court granted OPA's request for a show cause hearing.

On July 28 OPA moved to quash First National's Rule 60(b) motion because the attorney who had filed the motion, John Beard, had not entered an appearance on behalf of First National. First National opposed.

Before the court had ruled on its motion to quash, OPA filed an opposition to First National's Rule 60(b) motion. First National received this opposition on August 8. On August 9, the court entered two separate orders: (1) the court denied First National's Rule 60(b) motion; and (2) the court granted OPA's motion to quash First National's Rule 60(b) motion.

On August 19, First National filed its response to the court's order to show cause. In this response, First National again presented its objections to the court's June 30th order. At the August 23rd hearing, the court heard argument concerning the propriety of its June 30th order terminating First National as trustee, and then reaffirmed its decision.

This appeal followed.

## III. *DISCUSSION*

In this appeal, First National asserts that the superior court erred in denying its motion for relief from judgment. Alaska Civil Rule 60(b) provides:

(b) **Mistakes—Inadvertence—Excusable Neglect—Newly Discovered Evidence—Fraud—Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed

---

5. In a supporting affidavit, assistant public guardian Kelly Young stated that First National intended to continue charging trust fees until two certificates of deposit, acquired by the bank for the trust, had matured. Young also stated that First National had failed to transfer the trust's other assets within the required time frame.

or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

In its motion, First National asserted that it was entitled to relief from judgment under subsections (b)(1), (b)(4) and (b)(6).

■ A court's decision denying a Rule 60(b) motion will be reversed upon a showing of abuse of discretion. *Lovell v. Lovell*, 645 P.2d 151, 152 (Alaska 1982). Abuse of discretion will be found where this court is "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Id.*

### A. *First National Is Not Entitled to Relief from Judgment Under Civil Rule 60(b)(4).*

■ A party is entitled to relief from judgment under Civil Rule 60(b)(4) when the judgment is void. First National contends that the superior court's jurisdiction over matters concerning trusts may be invoked only by the initiation of proceedings under AS 13.36.035–.060. Alaska Statute 13.36.060 provides:

Proceedings under AS 13.36.035 are initiated by filing a petition in the court and giving notice under AS 13.06.110 to interested parties. The court may order notification of additional persons. A decree is valid as to all who are given notice of the proceeding though fewer than all interested parties are notified.

Alaska Statute 13.06.110 requires the petitioner to give fourteen days advance notice of the time and date of the hearing. Asserting that a trustee is an "interested person" under AS 13.06.050(20),[6] First National concludes that the court's June 30th order is void because it was entered without the filing

of a petition under AS 13.36.035, and without the notice of hearing required under AS 13.06.110. This argument is unpersuasive.

■ Alaska Statute 13.36.035(a) vests the superior court with exclusive jurisdiction over proceedings initiated by interested parties concerning the internal affairs of trusts. This includes proceedings to remove a trustee. AS 13.36.035(a)(1). However, AS 13.36.035(b) provides:

The management and distribution of a trust estate, submission of accounts and reports to beneficiaries, payment of trustee's fees and other obligations of a trust, *acceptance and change of trusteeship*, and other aspects of the administration of a trust shall proceed expeditiously consistently with the terms of the trust, free of judicial intervention and without order, approval or other action of any court, subject to the jurisdiction of the court as invoked by interested parties or as otherwise exercised as provided by law.

(Emphasis added.) Thus a person authorized to remove a trustee under the terms of the trust may do so without application to the court. *See* Restatement (Second) of Trusts § 107 (1959) (trustee may be removed either by the proper court or by the person, if any, who is authorized under the terms of the trust to remove the trustee).

■ In this case, under the terms of the trust, F.H. had the power to remove the trustee at any time by delivering a signed and acknowledged document to the trustee. The trust further provided that such removal would be effective twenty days after delivery of the document. The court's November 1992 order, clarifying the scope of OPA's guardianship, explicitly provided that OPA had the authority to terminate the trust or remove the trustee subject to court approval.[7] On this record, we conclude that OPA's

6. AS 13.06.050(20) provides:
"interested person" includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against a trust estate or the estate of a decedent, ward or protected person which may be affected by the proceeding; it also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons; the meaning

as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.

7. We note that such a provision is consistent with the powers generally entrusted to guardians. *See generally* 39 Am.Jur.2d *Guardian and Ward* § 78 (observing that guardians may often act as ward's agent and representative in matters

motion was properly raised in the course of the guardianship proceedings and that the procedures set forth in AS 13.36.060 do not apply.

In any case, First National was afforded both notice and an opportunity to be heard. As OPA points out, First National was served with a copy of OPA's motion to remove First National as trustee on June 16, 1994. First National had thirteen days to respond to the motion—ten days plus three days for service by mail. Alaska R.Civ.P. 77(c); Alaska R.Civ.P. 6(c). First National also had an opportunity to request oral argument. Alaska R.Civ.P. 77(e)(1). However, First National took no action within the required time frame, and the court entered the order as unopposed fourteen days after it was filed.

For the foregoing reasons, First National is not entitled to relief from judgment under subsection (b)(4).

### B. *First National Is Not Entitled to Relief from Judgment Under Civil Rule 60(b)(1) or 60(b)(6).*

■ First National also cited both subsection (b)(1) and subsection (b)(6) in its motion for relief from judgment. *See* Alaska R.Civ.P. 60(b)(1) (authorizing court to grant relief from judgment for mistake, inadvertence, surprise or excusable neglect); Alaska R.Civ.P. 60(b)(6) (authorizing court to grant relief from judgment for "any other reason justifying relief from the operation of the judgment"). However, in its motion, First National failed to identify any facts justifying relief from judgment under either subsection. On this record, the superior court properly denied First National's motion for relief from judgment under subsections (b)(1) and (b)(6).

relating to trust property). We also note that First National had an opportunity to challenge the propriety of allowing OPA to exercise the powers vested in F.H. under the trust document but failed to do so. In fact, the record indicates that the provision requiring court approval was added at First National's request. Court approval in this context cannot reasonably be read to mean a proceeding under AS 13.36.060.

8. Finally First National argues that the superior court erred in granting OPA's motion to quash its motion for relief from judgment. Alaska Civil

### C. *The Superior Court Did Not Err by Denying First National's Rule 60(b) Motion Without Making Written Findings.*

On appeal, First National contends that the superior court erred in denying its Rule 60(b) motion because the court failed to provide any written statement explaining its decision. According to First National, the superior court "simply did not want to be vexed by [the] vexing questions" raised by the motion and OPA's opposition. We disagree.

■ In denying a motion for relief from judgment, a court is normally not required to enter written findings of fact and conclusions of law. *See Olson v. Olson,* 856 P.2d 482, 483–84 (Alaska 1993) (holding that the civil rules "do not require the superior court to issue findings of fact when ruling on a Rule 60(b) motion"). On the record presented in this case, the superior court did not err in summarily denying First National's motion.

### D. *The Superior Court's Premature Denial of First National's Rule 60(b) Motion Was Harmless Error.*

■ First National also argues that the court improperly denied its Rule 60(b) motion before it was ripe. Under Civil Rule 77(d), a moving party has three days from the date an opposition is served to file a reply. First National's attorney received OPA's opposition to First National's motion on August 8. Because First National had until August 11 to file a reply, the court's August 9th denial was premature. However, because First National failed to demonstrate any basis for relief from judgment in its motion, this error is harmless.[8]

Rule 11 provides that a pleading which is not properly signed by an attorney of record "shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant."

First National's July 26th Rule 60(b) motion was filed by John Beard who had not entered an appearance in the case. John Beard formally entered an appearance on August 5 when Dan Coffey withdrew. The court apparently entered its August 9th order quashing First National's 60(b) motion before receiving Beard's entry of appearance in chambers.

## IV. CONCLUSION

First National has failed to establish that it is entitled to relief from judgment under Civil Rule 60(b). Under the terms of the trust, F.H. had the authority to remove the trustee on written notice. As F.H.'s guardian, OPA was authorized to exercise this power subject to court approval. On application to the court, OPA obtained court approval of its decision to remove First National as trustee. On this record, the court's June 30th order removing First National as trustee of the F.H. trust is valid. None of the grounds asserted for obtaining relief from judgment apply in this case.

AFFIRMED.

MATTHEWS, J., not participating.

---

Because the court denied First National's Rule 60(b) motion, we need not consider whether the court erred in simultaneously striking this mo- tion from the record under Civil Rule 11. On this record, any error is harmless.